## WILLIAM H. DOOLEY

*v.*

## JOHN VAN HOHENSTEIN.

*Opinion filed December 22, 1897—Rehearing denied February 2, 1898.*

1. ELECTIONS—*when judges' returns are not conclusive of election though ballots have not been properly preserved.* The returns of the judges of election are not conclusive evidence of the result, though the ballots are objects of suspicion by reason of undue exposure or want of proper preservation, where the judges have been so careless in performing their duties as to cast discredit upon the returns.

2. SAME—*in absence of evidence judges are presumed to have proclaimed result of election.* In the absence of evidence that the judges of election made no proclamation of the result of the election, as required by law, it will be presumed, on contest, that they performed their duty in that regard.

3. SAME—*when error to find that judges made no proclamation of result.* It is error for the court, in an election contest, to find in its decree that the judges made no "proclamation" of the result, where the contestant's petition contains an allegation, admitted by the answer and not denied by evidence, that the judges canvassed the votes, and by their canvass, announcement and return the contestant was declared elected by a certain number of votes.

4. SAME—*judges' failure to properly preserve ballots does not destroy their character as evidence.* The failure of election judges to place the ballots in a sealed envelope, according to law, will not be allowed to destroy the character of the ballots as evidence, so as to make the judges' return conclusive of the result of the election, particularly where it appears that the judges made mistakes in counting and sorting the ballots.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

ROWELL, NEVILLE & LINDLEY, and OWEN & OWEN, for appellant.

A. J. BARR, and MAYNE POLLOCK, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of McLean county in a contested election proceeding, declaring that Amos Rutlege, the democratic candidate,

was elected mayor of the city of Leroy, in that county, by a majority of seven votes, at the city election held on April 20, 1897, instead of William H. Dooley, the republican candidate, who received the certificate. The petition was filed by appellee, an elector. Upon the face of the returns as made by the judges and clerks of election Dooley appeared to have received 226 votes and Rutlege 221 votes, but upon the re-count, on the hearing in the circuit court, it appeared that Rutlege had received 226 votes and Dooley 219 votes. No controversy is raised in the argument here as to illegal votes or defective ballots, but the sole contention of appellant is, that the count as made by the judges of election and shown by their returns should prevail over the count made by the circuit court from the ballots as they appeared when produced at the trial.

"The rule is, that in a contested election proceeding the ballots are better evidence of the number of votes received by the respective candidates than the count made by the judges of election, where such ballots have been preserved according to law, and have not been so exposed to the reach of unauthorized persons as to afford a reasonable probability of their having been changed or tampered with.—*Hudson* v. *Solomon*, 19 Kan. 177; *Kingery* v. *Berry*, 94 Ill. 515; *People* v. *Burden*, 45 Cal. 241; Cooley's Const. Lim. (6th ed.) 788; McCrary on Elections, (2d ed.) secs. 555, 277; *Murphy* v. *Battle*, 155 Ill. 182." (*Beall* v. *Albert*, 159 Ill. 127; *Catron* v. *Craw*, 164 id. 20.) But as held in *Catron* v. *Craw, supra*, even when the ballots are objects of suspicion by reason of a want of proper preservation and by reason of undue exposure, yet the returns should not be accepted as conclusive if the judges of the election have been so careless in the performance of their duties as to cast discredit upon their returns. In other words, the evidence may be such as to discredit, as evidence, to some extent, at least, both the ballots and the returns, and to adopt an inflexible rule that either should be con-

clusive of the result in such cases would tie the hands of the court and put it in the power of designing persons to carry out their fraudulent schemes to change the actual result of an election.

In the case at bar the evidence showed that after having finished their count the judges of the election strung the ballots on a wire and sealed the ends, as the statute required, but having no envelope large enough to contain the ballots they placed them in the ballot-box unenveloped, locked the box, and delivered it, between eight and nine o'clock of the same evening, with the key, to the city clerk at his store. The judges informed the clerk at the same time of the condition of the ballots, and asked him if it would make any difference, and he replied that he did not know that it would, but that they could straighten that out afterwards. During the same evening the city clerk opened the box and took out the official poll-lists to make a copy of the returns, and permitted one of appellant's attorneys, who came into his store about that time, also to make a copy of the same. The city clerk testified, also, that he put the box containing the ballots behind the counter in his store, about half an hour after it was brought in by the judges, and left it there for the night, but did not remember whether he left the key in an unlocked drawer in the store that night or had it in his pocket; that no one tampered with the ballots in any way, so far as he knew or had any reason to believe; that he was not in the store after ten o'clock that night until about eight the next morning, and was out frequently the next day. It was also shown that Rutlege was his father-in-law and frequently came into the store, but there was no evidence whatever tending in the slightest degree to show that Rutlege saw, or had anything to do with, the box or its contents. The city clerk further testified that the next evening after receiving the ballot-box he called the three judges in, and told them he wanted the ballots sealed up,—that if they had to go into court

he wanted them in the right shape; that he then unlocked the box in the presence of the judges, and the ballots were taken out and put in an envelope and sealed up; that before that, any one, if the box were opened and he had access to it, could have marked the ballots without removing them from the wire. The city clerk had in his employ in his store two clerks, who testified that no one interfered in any way with the ballot-box while they were in the store, and that they did not see the key or know where it was.

The contention of appellant is, that the ballots, not having been put into an envelope and sealed up, as required by law, before they were delivered to the clerk, but having been left in a condition in which any one, on obtaining access to the box, might easily change a sufficient number of the ballots by the simple process of marking a cross in the square opposite Rutlege's name, without leaving means of detecting the fraud, lost their controlling effect as the best evidence, and that the result as declared by the judges should stand, and that the circuit court erred in not so holding. That court found by the decree that no proclamation was made by the judges of the election at the close of the count made by them, as required by law. Section 27 of the Ballot law, after providing for the canvass of the vote, requires that "each judge of election, in turn, shall then proclaim in a loud voice the total number of votes received by each of the persons voted for and the office for which he is designated. * * * Such proposition [proclamation] shall be *prima facie* evidence of the result of such canvass of the ballots." And it was held in *Catron* v. *Craw, supra,* that in the absence of such proclamation the returns in that case could not be regarded as *prima facie* evidence of the result.

We cannot agree with the trial court in finding that no proclamation was made by the judges in the case at bar, as required by the statute. No evidence was given on that subject, or in any way bearing upon it, on behalf

of either party, and in the absence thereof it should have been presumed that the judges performed their duty in that regard. But even if, in other respects, in making the canvass it were shown that the judges so far disregarded the duties imposed upon them by the statute that no presumption in the particular mentioned could be indulged in their favor, still it was alleged in the petition by the contestant "that the clerks and judges of said election at said polling place" (and there was but one) "canvassed the votes, and by their canvass, announcement and return said William H. Dooley was declared elected by five votes." This allegation was admitted by the answer, and there was no reason for giving any evidence on the subject. The statute requires no "announcement" except the "proclamation," and the allegation of the petition admitted by the answer must be understood as settling the question, by the pleadings, that the proclamation was made. In Webster's International Dictionary "announcement" is defined to be "the act of announcing or giving public notice; that which announces; proclamation; publication." Hence it was error to find that the judges made no proclamation as required by law. But whether such error should operate to reverse the decree depends on the effect which should be given to such proclamation and returns on the one hand, and to the ballots on the other, which returns, etc., and ballots, were properly admitted in evidence, as held in *Catron* v. *Craw, supra*, it having been shown, as contended by appellee, that the judges of election did make mistakes in their canvass. As said in *Murphy* v. *Battle, supra*, the credit to be given to the canvass of the judges of election is measured by their compliance with their duty.

Comment is made upon the fact that the initials of none of the judges had been endorsed on any of the ballots, as the statute requires, and the contention is made that the evidence clearly shows that the judges and clerks of election did make mistakes in their count, and that

the returns are thus discredited. There were 461 ballots in the box when counted by the judges, but only 459 names on the list of those who had voted, and the judges, finding two ballots so mutilated they could be counted for no one, instead of drawing from the box two ballots, so as to make the number agree, laid aside and refused to count the two defective ballots. When they had thus made the numbers agree they separated the ballots into four piles: one of 186 straight republican tickets as voted containing the name of Dooley, one of 158 straight democratic tickets as voted containing the name of Rutlege, one of 96 mixed tickets as voted, and one of 19, containing, as it was supposed, no vote for mayor. While later in the count the judges found that the pile of 19 ballots did contain at least seven votes for mayor, four for Dooley and three for Rutlege,—one of the judges testifying that it contained five straight republican tickets and three straight democratic tickets voted,—still, the controversy of fact, as presented by both parties, seems to center principally upon the answer to the question, What was the actual number of votes cast for the straight republican ticket? The judges counted 186. On the re-count in the circuit court on the trial there were but 177,—nine less than the judges counted,—and 157 straight democratic tickets,—one less than as counted by the judges. On the re-count in court it was found and agreed that there were eight ballots marked in pencil with a cross in the circle at the left of the party name "Republican" and also in the square at the left of the name "Amos Rutlege" on the other ticket designated "Democrat," and one ballot marked in the same way, except that the cross in the circle was marked in ink and the one in the square in pencil. The evidence showed that there were pen and ink and pencils in the voting booths.

It seems that the judges of election must have placed these nine ballots in the pile of straight republican tickets and counted them for Dooley, as they were necessary

to make the number of such tickets 186, and the theory of appellant is that these nine ballots must have been changed after they were counted by the judges and clerks. On this theory no one could have voted at that election for the straight republican ticket with the exception of the candidate for mayor, which is indeed possible but would hardly seem probable. The three judges, two clerks, two challengers (one for each party) and two persons who had checked off the voters as they voted,—nine in all,—were called as witnesses, and agreed, in substance, in their testimony, that there were 186 ballots in the pile of straight republican tickets, which were counted for Dooley for mayor. It seems that Williams, the democratic judge, called them off and laid them down in the pile, while Patterson, a republican judge, looked over his shoulder, and King, one of the clerks, stood by and watched the count while the other clerk kept tally. Patterson and King were positive that these 186 ballots were straight republican tickets as voted, others testified similarly, though not so positively, and no one to the contrary. Williams testified to a mistake made in putting five straight republican and three straight democratic ballots with the pile of 19 as containing no vote for mayor, and that he asked for a recount, but did not get it. Others testified there were but four of such republican votes for mayor, but did not testify whether they were what were called straight tickets or not. It is clear, however, that but seven of the pile of 19 were votes for mayor, as there were 12 left after the judges rectified this mistake. It does not appear, however, that these four votes for Dooley were counted in making the pile of 186 straight tickets, but whether they were or not, it would have been impossible to change the majority of five votes for Dooley, as found by the judges of election, to seven for Rutlege, as found by the circuit court, by the supposed change of nine straight republican tickets to nine for Rutlege for mayor, for that would have made a change of 18 votes, and made Rutlege's ma-

jority 13, instead of seven,—that is, on the supposition that the judges made no mistakes in counting the mixed tickets. So the supposed change of nine votes proves too much, and unless there was some other change,—and that, too, against Rutlege,—it proves that the judges of election made a mistake in their count. It appears clear that they did make mistakes in their count of the mixed tickets. They gave Dooley only 40 of these, which, added to the 186 straight votes, made 226 votes as returned by them. The court gave him 42 of the mixed tickets, which, added to the 177 straight votes, made 219 as counted by the court. It appeared at the trial, and the court found, that there were 14 blank ballots as to the office of mayor, not including the two mutilated ballots, instead of 12 as found by the judges of election. Unless there had been erasures of crosses made by the voters after the count by the judges, or a substitution of ballots, the judges of election must have counted for Dooley these nine ballots which on the trial in the court below were found marked for Rutlege. This may have been done by mistake, as Rutlege was the only democratic candidate voted for on these ballots; and as it was not shown that there was any appearance of erasures or of substitution of ballots, or that the sealing of the wire had been interfered with in any way, it would seem more probable, from all of the evidence, that such a mistake was made, than that these nine ballots were changed after they had been counted. However, all reasoning based on the number of straight tickets is very liable to error. As Rutlege gained five votes on the recount but lost one on the straight tickets, he must have gained six votes on the mixed tickets. The nine ballots here in controversy now appear as mixed tickets, so it might seem as if some of them had been counted by the judges for Rutlege, as he only gained six on the re-count. If the judges, in scanning the so-called 186 straight republican tickets, had failed to notice a cross in the square opposite the name of any candidate on the democratic

ticket, for mayor or for some other office, they would have counted them as straight, but on the re-count such cross would be detected and the tickets would not be reported as straight tickets by the court, while Dooley would not lose any votes by such a change if the cross were found for any candidate for any other office than that of mayor. As we have seen, Dooley gained two votes on the mixed tickets on the re-count. Who lost the votes that after-wards on the re-count turned out to be blank for mayor cannot be determined with any certainty, but it is reason-ably certain that the judges of election did make mis-takes in their count, and, that fact being demonstrated, their returns are so far discredited and cannot be held conclusive.

Section 27 of the Ballot law provides: "Immediately after making such proclamation, and before separating, the judges shall fold in two folds, and string closely upon a single piece of flexible wire, all ballots which have been counted by them, except those marked 'objected to,' unite the ends of such wire in a firm knot, seal the knot in such manner that it cannot be untied without breaking the seal, inclose the ballots so strung in an envelope, and securely tie and seal such envelope with official wax im-pression seals, to be provided by the judges, in such man-ner that it cannot be opened without breaking the seals, and return said ballots, together with the package con-taining the ballots marked 'defective or objected to,' in such sealed package or envelope to the proper clerk," etc. The judges, in failing to enclose the ballots in an envel-ope and sealing it according to the statute, neglected one of the most important duties required of them for the preservation of the ballots, and if, under all the evidence in this record tending to show mistakes and the omission to perform duties required of them, their returns should be held conclusive, it would put it in the power of judges of election in other cases to finally determine the results of elections by their own returns, carelessly or willfully

made inaccurate, by simply omitting to seal up the ballots. There was a neglect of duty in this case by the judges of election, as well as by the city clerk, but the ballots were admissible in evidence. The court below saw and heard the witnesses testify, and inspected the ballots, and we cannot say from the whole record that the conclusion there reached that Rutlege received a majority of the votes and was elected mayor of the city in question was erroneous.

The decree is affirmed.

*Decree affirmed.*