CHARLES A. CATRON

v.

IRA A. CRAW.

*Filed at Springfield November 23, 1896.*

164  20
170  631

164  20
180  135

164  20
184  554
184  559

164  20
186  ³37

164  20
e189 ² 38

164  20
192  ⁶ 60

1. ELECTIONS—*ballots properly preserved are the best evidence of the result.* In contested election proceedings the ballots cast are better evidence than the count of the judges and clerks of election, where they have been preserved in the manner and by the officers prescribed in the statute.

2. SAME—*when tally-sheets and poll-lists are not conclusive evidence of result.* Though the ballots have not been properly preserved, yet the tally-sheets and poll-lists are not conclusive evidence of the result, where the judges and clerks have been so careless in the performance of their duties as to cast discredit upon the returns.

3. SAME—*when ballots are not preserved according to law.* Ballots are not preserved according to law, where the judges, at the close of the election, tie those cast and counted, those rejected and those unused, in separate packages, and, without sealing them, lock them in the ballot-box and leave them over night on a shelf in an unlocked building.

4. SAME—*ballots not properly preserved are not the best evidence.* Ballots not preserved according to law are not the best evidence of the result, but are admissible, and may be considered in connection with other evidence.

5. SAME—*right of party contesting election to have errors of judges corrected.* Under section 27 of the Ballot act (Laws of 1891, p. 107,) a party contesting an election has the right to have the ballots opened in open session of the body trying the contest, and to have the errors of the judges in counting or rejecting ballots corrected.

6. SAME—*judges' proclamation, and not the returns, is prima facie evidence of result.* The proclamation of the judges, as provided for in section 27 of the Ballot act, (Laws of 1891, p. 107,) is *prima facie* evidence of the result, and where no proclamation is made the returns cannot be substituted as such *prima facie* evidence, especially where they have not been preserved according to law.

7. SAME—*when ballots are improperly refused admission.* In an election contest it is error to exclude the ballots and hold the returns to be conclusive evidence of the result, even though the ballots have not been preserved according to law,—and especially where the returns themselves have not been properly preserved.

APPEAL from the County Court of Champaign county; the Hon. JOHN G. THOMPSON, Judge, presiding.

JOHN J. REA, and THOMAS J. SMITH, for appellant.

J. L. RAY, and WOLFE & SAVAGE, for appellee.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

This was a proceeding by petition under the statute, brought by the appellee, Ira A. Craw, in the county court of Champaign county to contest the alleged election of the appellant, Charles A. Catron, to the office of president of the board of trustees of the village of Sadorus in that county, at an election held in that village on April 16, 1895, for a president and three members of the board of trustees of the village.

At the close of the election, the poll-book showed, that 109 ballots had been cast for president of the board. The tally-sheets show, that 50 votes were cast for appellant and 54 votes were cast for appellee, and that five votes were rejected as illegal and not counted by the judges for either candidate. There is no evidence in the record showing for whom the five rejected votes were cast, nor does it appear upon what grounds such votes were rejected.

On April 18, 1895, the old or former village board, of which appellant was president, met to canvass the returns, but made no attempt to do so. Appellant was in the chair as president. One of the trustees made a motion to recount the ballots; two members of the board voted for the motion and two against it, and appellant cast the deciding vote in favor of it. The board then adjourned subject to the call of the president, and met on April 25, 1895, three trustees and the appellant being present. The appellant, after stating as president that the object of the meeting was to recount the votes cast for each candidate at the election held at the town hall on April 16, ordered the clerk to unlock the ballot-box; and the ballots were thereupon removed. The village

board, without attempting to canvass the returns, mixed the rejected votes with those which had been counted, making no finding that the election judges had erred in not counting the five rejected ballots, and counted the votes cast for all candidates, including those for the nominees for president, at the number of 109, and declared that of these 109 votes the appellant had received 59 and the appellee 49, and announced in a loud voice the number of votes which each candidate on the ticket had received according to their recount. Immediately the village board, sitting as a board of canvassers, declared the appellant duly elected to the office of president; and he took the oath of office and entered upon his duties.

Thereupon the appellee filed the present petition, to which the appellant filed an answer. The county court, upon the hearing, decided that the appellee had received a majority of the legal votes, and entered judgment accordingly. From this judgment of the county court, finding that appellee was elected, the present appeal is prosecuted by the appellant.

The tally-sheets and poll-lists were made out and signed by the judges and clerks of election. At the hearing the appellee, in support of his contest, proved the returns by the custodian thereof who produced the same, and placed upon the witness stand the election clerks, who identified the tally-sheets kept by them, and testified that the tallies, figures and totals were the same as made by them at the count made at the close of the polls. The appellee insisted, that the returns were better evidence than the ballots in view of the circumstances hereinafter detailed, while appellant insisted that the ballots were better evidence than the returns.

The county court decided, that the returns were the best evidence and admitted them, and, upon objection by appellee, refused to admit the ballots offered in evidence by appellant. To this latter ruling the appellant

objected. The only real question in the case is, whether the court erred in refusing to admit the ballots cast at the election.

The ballots are considered the best evidence in determining the result of an election when it appears that they have been preserved in the manner and by the officers prescribed in the statute, and have not been so exposed to the reach of unauthorized persons as to afford a reasonable probability of their having been changed or tampered with. (*Kingery* v. *Berry*, 94 Ill. 515; *Beall* v. *Albert*, 159 id. 127; *Murphy* v. *Battle*, 155 id. 182; *Apple* v. *Barcroft*, 158 id. 649.) When the ballots have been thus properly preserved and have been submitted to no such improper exposure, they are evidence of a higher and more controlling character than the count of the judges and clerks of the election. But it is also true, that "the credit to be given the canvass of the judges of election is measured by their compliance with their duty." (*Murphy* v. *Battle*, *supra*). Even where the ballots are objects of suspicion by reason of a want of proper preservation and by reason of undue exposure, yet the tally-sheets and poll-lists should not be accepted as conclusive evidence of the result of the election, if the judges of the election have been so careless in the performance of their duty as to cast discredit upon the returns.

It will be necessary to examine the facts, in order to determine whether the court was justified in relying altogether upon the showing made by the returns, and in refusing to admit the ballots in evidence.

On the evening of April 16, 1895, at the close of the election, the ballots, that were counted as legal votes, were tied up in one package, the five votes cast but not counted in another package, and the unused ballots in still another package. The three packages of ballots and the poll-books and tally-sheets were placed in the ballot-box which was locked; one of the judges of election took the key of the box; and the ballot-box was left

on a shelf in the town hall, which was unlocked and left
unlocked that night. The judges and clerks of election,
after counting the votes and finding that the appellant
had 50 votes and the appellee 54 votes as shown by the
tally-lists, adjourned without making proclamation or
announcement of the result.

The next morning, April 17, the judges and clerks of
election met together at the town hall where the elec-
tion had been held, and where the ballot-box had been
left the night before, and sealed up the returns or tally-
sheets and poll-lists in an envelope and delivered them
to the village clerk; and they sealed up the three pack-
ages, one, of the 104 counted votes, the second, of the five
rejected votes, and the third, of the unused ballots, in an
envelope, and replaced them in the ballot-box, and locked
the ballot-box, and sealed it up, and left it on the shelf
in the town hall, which was unlocked; no examination
was made of the ballots, nor were the packages contain-
ing them untied.

On April 18, two days after the election, when the
village board met to canvass the returns, the village
clerk was present with the returns, but neither they nor
the ballots were produced; at that meeting one Thomas
McCloskey, who had been a candidate for trustee at the
election, appeared and presented a petition, stating that
he was not satisfied with the counting of the votes, and
asked for a recount of the ballots, which was ordered as
above stated; at that time the clerk was asked for the
key to the ballot-box in which the ballots were, but did
not have it; the key was in the possession of one of the
election judges up to about the 22d day of April, and the
village clerk did not get it into his possession until a day
or two before April 25.

When the board of trustees met on April 25, two of
the judges of election were present, and say that the en-
velope containing the three packages of the counted, the
rejected and the unused ballots, had its seal unbroken,

and was apparently in the same condition as when they sealed it up on the morning after the election; but whether the ballots were the same, or in the same condition, as when the judges received them on election day, does not appear; at that time appellant asked the election judges to inspect the packages; and two of them, Apple and Brown, did so, but the other judge, Kelley, refused to have anything to do with it. Appellant, at that meeting, appointed a committee to count the votes; this committee opened the packages, containing the returned tickets, the defective tickets and the ballots cast at the election. In the village record of this meeting of April 25, one entry recites that the appellant, Catron, received, for president, 59 votes and the appellee, Craw, received, for president, 49 votes, and another entry recites that the appellant, Catron, received, for president, 49 votes; the committee so appointed found that the number of ballots cast was 109, but after finding that the appellant received 59 and the appellee 49 of these ballots, making 108, it does not appear why the other ballot was ignored; after announcing, as above stated, the number of votes received by each candidate, the members of the board then put the 109 ballots, consisting of the 104 ballots counted by the election board, and the five rejected by them as illegal, together in an envelope, which they sealed up and marked as follows: "Ballots cast at the election held on April 16, as corrected at a meeting of the village board on April 25, 1895." They then destroyed the envelope, in which the judges of election had sealed up the ballots counted by them. It does not appear what was the number of the unused ballots returned to the clerk.

Appellant testifies, that when the ballot-box was opened on the 25th of April, the rejected ballots were separate, tied up with a string; at that time the rejected ballots were counted, but he states that he does not know whether they were marked rejected or not, or for whom

they were cast. The returns at that time were not asked for nor examined.

The evidence of the three election clerks, who kept the tally-sheets, shows that the returns sealed up in an envelope and delivered to the village clerk on the morning after the election, had not been opened before the time of the trial in the court below, and that they were in the same condition then as when made at the close of the polls on the evening of the election, having the figure 54 opposite appellee's name and the figure 50 opposite appellant's name. They also contained the necessary oaths and were made out and authenticated in due form.

It is evident from the foregoing recital of facts, that there was great carelessness in the manner of keeping the ballots after the election. Section 27 of the act of June 22, 1891, to provide for the printing and distribution of ballots, etc., provides that, when the canvass of the ballots has been completed, and the clerks have announced to the judges the total number of votes received by each candidate, and each judge of election has proclaimed in a loud voice the total number of votes received by each of the persons voted for and the office for which he is designated, the judges of election shall, immediately after making such proclamation and before separating, string the ballots counted by them upon a wire, etc., and "enclose the ballots so strung in an envelope and securely tie and seal such envelope with official wax impression seals," etc. (3 Starr & Cur. Stat. p. 572). It has been held, that the requirement as to stringing the ballots is merely directory. (*Murphy* v. *Battle, supra; Hodge* v. *Linn,* 100 Ill. 397). Here, however, the ballots were not only not enclosed in a sealed envelope at the close of the election and returned to the proper clerk, but they were simply tied with a string, and thrown loosely, along with two packages of rejected and unused ballots and the poll-lists and tally-sheets, into the ballot-box; and the ballot-box, though locked, was left over

night on a shelf in an unlocked town hall. When these ballots were sealed the next morning, no examination was made of them; and while the evidence tends to show, that they were in the same condition at the time of the trial as on the morning after the election, it does not appear that they were then in the same condition as at the close of the election on April 16. The key of the ballot-box, which was an ordinary one and such as was in common use, was in unauthorized hands for many days after April 17, and the ballot-box, even after the ballots were sealed, was left exposed in the unlocked town hall.

The opening of the ballot-box, and the breaking of the seal of the envelope containing the ballots, and the recounting of the ballots on April 25, were unauthorized acts. (*Beall* v. *Albert, supra*). The mixing of the five rejected ballots with the 104 ballots which were counted was equally unauthorized. Section 26 of said act of June 22, 1891, provides that certain ballots shall not be counted, and the provision to that effect is mandatory. (*Parker* v. *Orr*, 158 Ill. 609). It also provides, that the ballots not counted shall be marked "defective" on the back thereof, and "shall be enclosed in an envelope securely sealed and so marked and endorsed as to clearly disclose its contents." (3 Starr & Cur. Stat. pp. 571, 572). The package, containing such ballots marked "defective," is required by section 27 to be returned to the proper clerk or board to be carefully preserved for six months; and, in case of a contest, the ballots may be opened, and the court is authorized to determine whether or not the judges of election erred in refusing to count such ballots. In this case, the evidence leaves it uncertain, whether the five ballots, which the judges of election refused to count, were marked "rejected" or not. From the testimony in the record it is impossible to say, whether the mixing of the rejected with the counted ballots by the board of trustees on April 25 had the effect of making it impossible to distinguish between them, or not.

The circumstances already detailed show, that the ballots could not be received by the trial court as the best evidence, or as controlling evidence, in determining the result of the election. Yet we are of the opinion, that they ought to have been admitted by the court, to be considered in connection with the returns and the other testimony in the case, in view of what is said hereafter. Said section 27, after providing for the destruction of the ballots at the expiration of six months, contains the following proviso: "*Provided,* that if any contest of the election of any officer voted for at such election shall be pending at the expiration of said time, the said ballots shall not be destroyed until such contest is finally determined." So much of the proviso as is thus quoted was, in substance, a part of the Election law of April 3, 1872, (1 Starr & Cur. Stat. p. 1009, sec. 59, chap. 46), and was the only portion of the proviso in force when the case of *Kingery* v. *Berry,* 94 Ill. 515, was decided. But section 27 of the act of June 22, 1891, added the following to what is quoted above: "In all cases of contested elections the parties contesting the same shall have the right to have said ballots opened and to have all errors of the judges in counting or refusing to count any ballot corrected by the court or body trying such contest; but such ballots shall be opened only in open court, or in open session of such body, and in the presence of the officer having the custody thereof." (3 Starr & Cur. Stat. p. 572).

In view of this positive language of the statute, the ballots should not always be excluded merely because they cannot be regarded as the best evidence, or as controlling evidence, in determining the result of the election. They may be competent evidence and admissible for what they are worth under certain circumstances, even though, by themselves, they may not be conclusive. The rule is that, where the ballots have not been preserved according to law, and have been so exposed as to afford a reasonable probability of their having been changed or tampered

with, they cannot be received as the best or controlling evidence; but the rule does not necessarily contemplate their exclusion as evidence of a lower order than the best evidence.

It is clear, that the judges of election failed to comply with the law in that they made no proclamation of the result, as required by said section 27.  That section provides as follows: "When the canvass of the ballots shall have been completed, as now provided by law, the clerks shall announce to the judges the total number of votes received by each candidate; each judge of election in turn shall then proclaim in a loud voice the total number of votes received by each of the persons voted for and the office for which he is designated;  *  *  *  such proclamation (proposition) shall be *prima facie* evidence of the result of such canvass of the ballots."  The *prima facie* evidence of the result is the proclamation.  As no proclamation was made in the present case at the time required by law, the returns, of themselves and without the proclamation, could not be regarded as *prima facie* evidence of the result; and, while it is true, that appellee introduced oral testimony for the purpose of showing, that the returns were in the same condition at the trial in which they were at the close of the election on the evening of the day of election, yet it is also true, that the returns were left unsealed, together with the ballots, in the ballot-box on a shelf in the unlocked town hall during the whole of the night following the day of the election; that 109 votes were cast, of which appellee received only 54, not a majority; and that the correctness of the returns in awarding 54 votes to appellee and 50 votes to appellant depends upon the question whether or not the five rejected votes were properly and lawfully rejected. Section 22 of the act of June 22, 1891, provides that "one of the judges shall give the voter one, and only one, ballot on the back of which such judge shall endorse his initials," etc.  (3 Starr & Cur. p. 570).  Here, Brown, one of

the judges, says: "I think I put my name on 109 ballots. Possibly one or two ballots did not have my name on." Section 26 of said act provides: "If the voter marks more names than there are persons to be elected to an office, or if, for any reason, it is impossible to determine the voter's choice for any office to be filled, his ballot shall not be counted for such office. No ballot without the official endorsement shall be allowed to be deposited in the ballot-box, and none but ballots provided in accordance with the provisions of this act shall be counted." (3 Starr & Cur. Stat. p. 571).

The questions, whether the five rejected ballots were marked, "defective," or not; and whether, if marked "defective" so as to be capable of identification notwithstanding their mixture with the 104 counted ballots, they were rejected because not officially endorsed, or not provided in accordance with the provisions of the Ballot act, or because they contained more than the requisite number of names, or because they in no way indicated the voter's choice—these questions might have been determined, or their determination might have been helped, in this particular case, by the admission of the ballots; and their admission was particularly desirable in view of the allegations of the appellee's petition. The petition contains the following allegations: "Petitioner further represents and shows unto your Honor that he was duly and lawfully elected by a majority of the legal votes cast at said election and the said Catron was not elected, as petitioner verily believes; that said ballots were not correctly counted, and that a correct count of all lawful ballots cast will show that petitioner was duly and lawfully elected president of the board of trustees of the village of Sadorus, and that said Catron was not elected; that, in order to determine this contest it would be necessary to have said ballots produced, with the poll-books and tally-sheets of said election, wherefore the petitioner prays that the court may issue an order to the clerk of

the board of trustees of said village to produce said ballots, poll-books and tally-sheets upon the hearing of said contest, * * * and that upon a hearing hereof, if a recount of said ballots and inspection of said poll-books and tally-sheets, together with the evidence produced, shall show that your petitioner was elected to the said office of president of the board of trustees of said village, that he may be declared so elected by this honorable court, and such other and further relief as equity may require and to your Honor seem meet."

Section 113 of the Election law provides, that "the person desiring to contest such election shall, within thirty days after the person, whose election is contested, is declared elected, file with the clerk of the proper court a statement in writing, setting forth the points on which he will contest the election, which statement shall be verified by affidavit in the same manner as bills in chancery may be verified." (1 Starr & Cur. Stat. p. 1019).

Now, one of the points, on which the appellee relies in his statement or petition, is, that a correct count of the ballots would show his election; and that, in order to determine the contest, the ballots should be produced and a recount of them should be made. In view of these allegations in the petition, we are unable to see why it was not proper to admit the ballots for what they were worth, to be considered in connection with other evidence produced.

For the error in refusing to admit the ballots, the judgment of the county court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*