## ANDREW S. CALDWELL

*v.*

## ROBERT J. McELVAIN.

184  552
186  ³36
186   37

'184  552
e189 ⁷ 38
184  552
192 ² 60
184  552
194 ⁵375

184  552
e211 ⁷ 68
j211 ⁷ 74

*Opinion filed February 19, 1900—Rehearing denied April 11, 1900.*

1. ELECTIONS—*contestant has the right to have the ballots opened and errors of the judges corrected.* Under section 27 of the Ballot law the party contesting an election has the right to have ballots opened and the errors of the judges in counting and rejecting ballots corrected by the body trying the contest.

2. SAME—*when returns are not conclusive though the ballots are under suspicion.* Returns from particular precincts are discredited by evidence showing that the election was loosely conducted in such precincts and that the counting of the ballots was in some respects unsatisfactory, and in such case the returns are not conclusive, even though the ballots may be objects of suspicion by reason of want of proper preservation.

3. SAME—*effect where the evidence discredits both ballots and returns.* Where the evidence tends to discredit both the ballots and the returns of an election, the question what was the true result of the election must be determined by a consideration of both, and of all the attending circumstances.

4. BALLOTS—*effect where crosses are made at the head of more than one ticket.* Where two, only, of the five tickets printed upon a ballot have a candidate for a certain office, a ballot marked with crosses in the circle at the head of each of such two tickets cannot be counted for either candidate; but where the crosses marked are in the circle at the head of one of the tickets having a candidate for such office and one or more which have not, the ballot may be counted for such candidate.

5. SAME—*effect where other names on the ticket are erased.* Where a cross is marked in the circle at the head of a ticket, but the name of some candidate, or the printed matter at the bottom, is erased, or the name of one of two candidates for the General Assembly is erased and his share of the vote given to the other, the ballot may be counted for the candidates whose names are not erased.

6. SAME—*effect of marking square opposite name of candidate on other ticket.* A ballot marked with a cross in the circle at the head of one ticket but with a square opposite the name of a candidate on another ticket should be counted for the candidate so marked.

7. SAME—*effect of failure of ballot to show initials of judge.* Ballots not having the initials of the judges of election endorsed thereon cannot be counted, in absence of evidence tending to show fraud or mistake upon the part of the judges, since the presumption is that the judges of election discharged their duty.

8. SAME—*ballot having name of voter on back cannot be counted.* The name of the voter upon the back of a ballot is a distinguishing mark and the ballot cannot be counted.

9. SAME—*ballots bearing identification marks cannot be counted.* A ballot on which the name of a certain person for an office not to be filled at the election is written bears a distinguishing mark and cannot be counted; so, also, with a ballot having a row of dots carefully made around the inside of circle in which cross is marked.

APPEAL from the Circuit Court of Jackson county; the Hon. A. K. VICKERS, Judge, presiding.

JAMES H. MARTIN, WILLIAM W. CLEMENS, and JOHN M. HERBERT, for appellant.

F. M. YOUNGBLOOD, W. P. LIGHTFOOT, M. M. THOMPSON, and W. W. DUNCAN, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

At the election held November 8, 1898, Andrew S. Caldwell, appellant, and Robert J. McElvain, appellee, were opposing candidates for the office of county judge of Jackson county. Upon the canvass of the election returns by the county clerk and two justices of the peace it was found and declared that appellant had received 3320 votes and appellee 3301. Appellant was declared elected to the office, and he was commissioned and assumed its duties. On November 29, 1898, appellee filed a statement in the circuit court of said county for the purpose of contesting the election. Issues were formed and the cause heard, resulting in a finding that appellee had received 3320 votes and appellant 3308 votes. Appellee was declared duly elected, and appellant prosecuted this appeal.

The ballots cast at the election were opened and counted in the presence of the court and the finding was based on such re-count. Objection was made by the defendant to opening and counting the ballots, but this objection was properly overruled. Under section 27 of

the Ballot law the party contesting an election has the right to have the ballots opened, and to have all errors of the judges in counting or refusing to count any ballot corrected by the court or body trying such contest. *Catron* v. *Craw*, 164 Ill. 20; *Bonney* v. *Finch*, 180 id. 133.

The principal argument against the decision of the court is, that the ballots from certain precincts should not have prevailed over the returns of the judges of the election. The canvass made by the election officials is merely a count of the ballots and the return is a statement of such count. The ballots are necessarily better evidence than such a count if their integrity has been preserved. Therefore, where it satisfactorily appears that they have not been tampered with, they are better evidence of the result of the election than the returns of the judges. The value of the ballots and the force of the evidence which they furnish are to be determined by considering the question whether they have been preserved according to law, or have been so exposed to the reach of unauthorized persons that they may have been changed or tampered with. If the canvass made by the judges is free from suspicion, and there is no evidence of negligence on their part or conduct which would cast discredit upon their returns, and the ballots have not been properly preserved but have been so kept that they might have been reached by unauthorized persons, the canvass will not prevail over the returns. (*Beall* v. *Albert*, 159 Ill. 127; *Eggers* v. *Fox*, 177 id. 185; *Bonney* v. *Finch*, *supra*.) Where, on the other hand, there is evidence that the judges have made mistakes and have been so careless in performing their duties as to cast discredit upon their returns, such returns will not be conclusive evidence of the result as against the ballots, although the latter may be objects of suspicion by reason of undue exposure or want of proper preservation. The evidence may discredit both the ballots and the returns, and in such case the question what the true result of the election is must

be determined by a consideration of both and all the circumstances. *Dooley* v. *VanHohenstein,* 170 Ill. 630.

It was proved that after the ballots were brought to the county clerk they were all safely kept and were not exposed to the risk of being tampered with. In order to make them more secure, the county clerk put more wax on all of the seals and they were then deposited in a cupboard in a vault sixteen feet square, in his office, where the county records were kept. The windows were barred and fastened with a lever on the inside and there were double doors to the vault. The inside door was fastened with a latch and the outside door had a combination lock, and it was kept locked except when the clerk or his deputies were in the office. There was an outside door of the clerk's office which was open during office hours, but no one was allowed to go into the vault unless the clerk or his deputy was with him. At the suggestion of defendant and his counsel more wax and a better seal were added to the bags, and they were put in large bags and sealed up and deposited in a bank. They were produced at the hearing unchanged and with the seals unbroken.

So, also, there was no question but that the ballots had been properly kept from the possibility of change or interference before reaching the clerk, except as to the town of Elk and the west side precinct in Carbondale. As to the town of Elk, the evidence shows that the returns were not sealed up when brought to the county clerk. The ballots were strung on wire and the ends twisted and sealed by the judges of election, and they were then put in a sack, which was tied and returned to the county clerk by one of the judges. This judge identified the ballots, and testified that they were in the same condition as when the judges counted and delivered them, and that they were not tampered with or changed after they were counted, strung on the wire and sealed. The judges had rejected some ballots, which they put in an

envelope and sealed up, and these ballots were identified by the same judge and they had his initials on them. When the returns from this town came to the county clerk he sealed them up. On the re-count of that town there was no change from the count by the judges, but the court gave to contestant a gain of three votes on said ballots rejected by the judges. There was no disagreement, therefore, between the returns and the ballots from that town as to which the question of preservation of ballots could make any difference. This town of Elk and the two precincts of Carbondale are the only places in which the contestant made gains on the re-count, but in the other precincts of the county, taken as a whole, he lost on the re-count.

As to the west side precinct of Carbondale, the evidence was that the ballots were counted, strung on wire and sealed, and put in a canvas bag and tied and sealed in accordance with the statute. This occurred about four o'clock in the morning, and they were then delivered by the judges to Henry Crawshaw, supervisor of the town of Carbondale, and he, with the town clerk, who was a clerk of the election, carried them to the office of the town clerk, who locked them in the office and took the key with him. The supervisor and Joseph R. Crawshaw, who was a clerk of the election, sat on the steps of the office at the foot of the stairs until breakfast time, when the supervisor went to his home, out of town, to his breakfast. After breakfast he came back and stayed there until near noon, when the clerk came and unlocked the office. The supervisor then got them out of the office, and, with an election judge of the east side precinct, took them to the county clerk, properly sealed and in the same condition as when they left the hands of the judges of election. In this precinct one of the tally-sheets returned to the county clerk showed various erasures. During the progress of the count they would find that one of the clerks differed with the other two, and

when he got behind he would mark up to the other clerks, and when he got ahead they would have him erase to correspond with the others. After the judges had finished all the counting they found this clerk had thirteen more votes tallied for the contestant than the others, and the last thirteen on his list were erased. The only explanation of the erasure was that the other clerks had thirteen less than the clerk who kept this tally-sheet, and believing that they were most likely to be right, the tallies were erased to correspond with them, without any re-count to see who was right. The tally-list returned shows that the republican State ticket, on which the contestant was a candidate, had 311 votes and the contestant 165, while the democratic State ticket had 158 and the defendant 300.

As to the east side precinct of Carbondale, it was proved that the tally-sheet returned to the office of the Secretary of State showed an erasure of the last nine votes tallied for the contestant. No explanation of this erasure was offered. A judge of the election testified that after the voting was finished there were ten more ballots in the box than on the poll-book. The poll-list showed 704 voters, and there were ten extra ballots. They put the ballots back in the box and drew out ten and burned them. The clerks kept a list of the voters and numbered them as they received their ballots, and this condition of things tends to show that the manner of conducting the election was negligent. In this precinct the republican State ticket had 214 votes and contestant only 86, while the democratic State ticket had 163 and the defendant 291.

The evidence tended to discredit the returns in both precincts of Carbondale by showing that the election was loosely conducted and the counting of the votes in some respects unsatisfactory. We are satisfied that the ballots were the better evidence, and the conclusion on the re-count was correct.

During the progress of the re-count objections were made by the different parties to a great many ballots for various reasons, but while the ballots were numerous the questions may be classified under a few heads. There were a considerable number where voters had made a cross in the circle at the head of more than one ticket. There were five tickets on the ballot: the republican, democratic, people's, prohibition and socialist labor. The republican and democratic tickets were the only ones upon which there was a candidate for county judge. Where there were marks in the circle at the head of these two, the vote was for both and neither was counted; but where there was a cross at the head of the democratic or republican ticket and also at the head of one or more of the other tickets the ballot was counted for the candidate for county judge on said democratic or republican ticket. There being no candidate for that office on the other tickets, the cross did not indicate a vote for that office. The rulings on these questions were right. In other cases there was a cross in the circle at the head of the ticket and the name of some candidate other than county judge was erased, or the printed matter at the bottom of the page was erased, or there was a change in the number of votes cast for one member of the General Assembly and the other candidate was erased. In the printed ballots one and a half votes were given to each candidate for the General Assembly, and the voter sometimes marked three in place of one and a half and erased the other name. In cases like this the ballot was counted for county judge, as we think, properly. In some cases there was a cross in the circle at the head of the republican or democratic ticket and the candidate for county judge on the other ticket was marked with a square opposite his name. These were counted for the candidate so marked. In some cases there were crosses made by a double stroke of the pencil instead of one, and sometimes the crosses were of irregular shape, but the ballots were held valid.

The most important ruling was that the ballots upon which the initials of the judges of election did not appear should be rejected. The official endorsement includes the initials of the judge, which are required to be endorsed upon the ballot, as was recognized in *Catron* v. *Craw, supra.* It is true that the intention of the voter is to control if possible, and that the courts are reluctant to deprive any elector of his vote when the fault is not his own; but if it should be held that a ballot not bearing the initials of a judge of the election should be counted, it could only be where proof of its genuineness was given. The presumption is that the judges discharged their duty, and if the voter cannot be deprived of his right to vote by the fraud or mistake of the election officers, there should be something tending to show the existence of such fraud or mistake. In this case there was no evidence tending to show that the judges failed to put their initials on any ballots, and the court was right in rejecting ballots without such initials. *Kelly* v. *Adams,* 183 Ill. 193.

In some cases the name of the voter was written on the back of the ticket, and such tickets were not counted, on the ground that the name was a distinguishing mark. There was no other apparent reason for putting such name there. We are satisfied that the above rulings of the court were correct.

There is one ballot cast for the contestant which was objected to and not counted, but there was no ruling of the court on the question. On it was written, "Isadore Piquard, Poundmaster." There was no officer of that kind being voted for and none on the ticket. The writing was not put on the ballot through ignorance, mistake or unskillfulness of the voter, and we are inclined to consider this as a distinguishing mark.

The disputed ballots have been sent to this court and we have examined them, with the result that we find three rejected ballots which, under the rules stated,

should have been counted for the contestant, and three rejected ones which should have been counted for the defendant. Also, there are two counted for defendant which, we think, should have been rejected. On one of them there is in the circle at the head of the ticket the appearance of an erasure, but there is no mark remaining. The paper was rubbed almost through, as though there had been something there which was erased, but the ticket is a blank ticket. The other has a cross in the democratic circle, and dots are carefully made around the inside of the circle in such a way as to serve as a distinguishing mark. These dots were evidently not made in any attempt to make a cross or to vote for anybody. They could serve no purpose except to identify the ballot. These differences do not affect the result.

The decree of the circuit court is affirmed.

*Decree affirmed.*