## GEORGE M. JETER

*v.*

## STEPHEN I. HEADLEY.

*Opinion filed June 21, 1900.*

1. ELECTIONS—*first question on a contest is whether ballots have been properly kept.* Where it is sought to overcome the returns of an election by re-counting the ballots, the first question for determination is whether the ballots have been so carefully preserved as to assure the court that they have not been exposed to change.

2. SAME—*unimpeached returns must prevail if ballots are discredited.* Unimpeached returns must prevail on contest if the ballots have been so carelessly kept after being returned as to destroy their efficacy as proof over the returns, whether they were in fact changed or not.

3. SAME—*when ballots are not properly preserved by the county clerk.* Ballots are not properly preserved by the county clerk, though kept in his office in a vault accessible only through the office and having but a single entrance closed with a heavy door provided with a combination lock, where it is shown the lock was kept in such condition, day and night, that persons unfamiliar with the combination could open the door; that there were many keys to the court house and the clerk's office, and that the office employees, if at their desks, could not see the entrance to the vault; and particularly where the evidence tends strongly to show that the ballots were in fact tampered with after being placed in the vault.

APPEAL from the Circuit Court of Edgar county; the Hon. H. VANSELLAR, Judge, presiding.

H. A. NEAL, J. E. DYAS, and F. C. VANSELLAR, for appellant.

H. S. TANNER, R. L. McKINLAY, and EADS & EADS, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

These parties were rival candidates for county judge of Edgar county at the November election, 1898, appellant being the republican and appellee the democratic

candidate. By the returns and canvass of the votes appellee was found to have received a majority of sixty-eight, and thereupon received a certificate and commission, and entered upon the duties of the office the first Monday of December of that year. Within the time fixed by statute, December 12, 1898, appellant filed his petition in the circuit court of that county to contest appellee's election. The only ground of contest set up in the petition was the alleged mis-count of the ballots. Issue being joined, the cause was, by agreement, submitted to the circuit judge, without the intervention of a jury. The original ballots were brought into court and re-counted, the result showing that appellant had received a majority of sixteen votes over appellee. Upon the issue made, and this evidence, the only question presented to the trial court for decision was whether or not the re-count of the ballots should prevail over the returns of the election officers, and that question was decided in the negative, and an order entered September 1, 1899, dismissing the petition at contestant's cost. To reverse that judgment this appeal is prosecuted.

The law applicable to the case is not difficult of ascertainment. Section 27 of the Election law of 1891, (Laws of 1891, p. 118,) after prescribing the duties of the election judges in returning the ballots to the proper clerk or board of election commissioners, requires such officer to "carefully preserve said ballots for six months," at the expiration of which time they shall be destroyed, "*Provided*, that if any contest of the election of any officer voted for at such election shall be pending at the expiration of said time, the said ballots shall not be destroyed until such contest is finally determined. In all cases of contested elections the parties contesting the same shall have the right to have said ballots opened and to have all errors of the judges in counting or refusing to count any ballot corrected by the court or body trying such contest; but such ballots shall be opened only in open

court or in open session of such body and in the presence of the officer having the custody thereof."

It has been frequently held by this court that where it is satisfactorily shown that the ballots have been properly returned to the clerk or board of election commissioners, and securely and safely kept, so that there has been no opportunity to change them, they shall be regarded as the best evidence of the actual result of the election, and shall prevail over the count and return by the election judges, even though there is no proof of mistake or misconduct on the part of the election judges. We have so often held this proposition that a citation of the cases is unnecessary. The difficulty in determining whether such weight shall be given to the ballots has always arisen upon the question whether or not they have been properly returned, and carefully preserved by the custodian after receiving them. It was stipulated in this case "that each election officer who returned the ballots and election returns from each voting place to the county clerk, testified that he returned the same in the condition in which he received them from the election officers, with seals unbroken, and that they had not been broken or tampered with while in his possession," so that the only question here is whether or not they were safely kept by the county clerk.

In *Kingery* v. *Berry*, 94 Ill. 515, we quoted with approval the following language of the Supreme Court of Kansas in *Hudson* v. *Solomon*, 19 Kan. 177: "In order to continue the ballots controlling as evidence, it must appear that they have been preserved in the manner and by the officers prescribed in the statute, and that while in such custody they have not been so exposed to the reach of unauthorized persons as to afford a reasonable probability of their having been changed or tampered with." This rule was followed in *Bonney* v. *Finch*, 180 Ill. 133, and cases there cited, and is also recognized in the still later case of *Caldwell* v. *McElvain*, 184 Ill. 552.

Where the evidence shows that both the judges of election and the custodian of the ballots have failed to properly perform their duties, (the one in receiving, counting and returning the ballots or the other in safely preserving them,) neither the return of the judges nor the re-count can be allowed to prevail over the other, but the result must be determined from a consideration of both, with all facts and circumstances surrounding the case. (*Catron* v. *Craw,* 164 Ill. 20; *Dooley* v. *VanHohenstein,* 170 id. 630; *Caldwell* v. *McElvain, supra.*) There is, however, in this case no direct evidence of fraud, mistake or misconduct on the part of the officers who conducted the election in any of the several precincts of the county. The only claim of proof of misconduct on their part made on behalf of appellant is, that the re-count shows that they were guilty of either fraud or mistake. But this is assuming that the re-count of the ballots is better evidence than the returns, which is the very question at issue. The first point for decision must therefore be, were the original ballots so preserved by the county clerk from the time they were returned to him until they were brought into open court and offered in evidence, as to entitle them to credit over the returns.

At the time the ballots were returned the incumbent of the office of county clerk was Stephen Maddock. He testified that he received and placed the ballots in the vault in the county clerk's office, and that they were not interfered with or handled by anybody during his term of office, *to his knowledge,* and that he turned them over to his successor, E. E. Ellidge, when the latter took the office, December 5, in the same condition they were received by him, *so far as he knew.* His deputies also testified that they in no way disturbed or changed them, and that to their knowledge they were not interfered with by others; and the evidence of Ellidge and his deputies is to the same effect. No change whatever in the manner of keep-

ing them was made after Ellidge took charge of the office. The vault in which they were placed is a small, triangular-shaped room, about four and a half feet in depth at the deepest place and six or seven feet long at the longest place. In it is a metal case for boxes, containing papers, and the base of this case is about eighteen inches from the floor. No other furniture was in the vault. There was no access to it except through the county clerk's office, and the one entrance to it had a heavy outside door and two inner doors, the latter being fastened by lock and key and the outside door by a combination lock. The evidence clearly shows that after the count by the canvassing board the day combination alone was used, both day and night, in fastening the door. Hiram Lycan, one of the deputies of Mr. Maddock, testified that the vault was put in in 1891, and that he did not know that the day combination had ever been changed. He says: "The day combination was simple. I do not recollect the number. You just turned it to a certain figure and then opened it. It was in that condition usually, day and night. When the combination was on in full it was very hard to open." W. E. Redmon, a deputy of Mr. Ellidge, testified: "The day combination cannot be changed." And he also says that with that combination the door could be unlocked without difficulty, even by one not knowing the combination, from the dropping of a lever and the sense of feeling, without looking at the plate at all. He further testified that he had seen some five or six different persons, who did not know the combination, open the door when the day combination was on; and six witnesses testified that during the trial they opened the door fastened with the day lock without difficulty, not knowing the combination.

There is nothing to discredit the testimony of these witnesses, unless it be, as contended by counsel for appellant, the improbability of their statements. We are not prepared to say, in view of all the testimony, that

their evidence is not reasonable. All the witnesses agree that the day combination was very simple and easily understood, and we think it a matter of common experience with those at all familiar with such locks, that the contents of a safe or vault are only secure when the full combination is turned on. Even if it be conceded that one not knowing a day combination could not open the door when locked unless by accident, still, in view of the fact that no change had been made in this one during the encumbency of three different county clerks, and the ease with which one, when standing by when the door was opened, could see whether the turn was to the right or left, and even the number on the dial to which the lock was turned to unlock it, it must be admitted the lock with so simple a combination afforded little or no security to the contents of the vault against persons desiring or having a motive to interfere with them. It is not claimed on behalf of appellant that there was any difficulty in entering the court house and county clerk's office, there being many keys which would unlock either. The evidence is also without contradiction that clerks in the county clerk's office, sitting at their desks, could not see the door of the vault, so as to detect persons entering it.

There is nothing in the evidence in this case, so far as we have been able to discover, to justify an inference or belief that either of the county clerks or their deputies having the custody of these ballots, themselves interfered with or changed the same or had knowledge of others doing so. The contrary is clearly shown. They do state, however, that they gave no particular attention to the packages, but only occasionally noticed them as they lay in the vault. The question is, was the vault in which they were placed, and the manner in which the door was kept fastened, such a safe keeping of them as should entitle them, under the law, to such probative force as to overcome the otherwise unimpeached returns of the election officers? We think not.

But again, the testimony strongly tends to raise the suspicion that the ballots were in fact interfered with after being placed in the vault. The weight of evidence is, that when the bags containing them were placed in the vault they were placed under the iron case and at the end of it, so that the vault could be entered and the case of boxes reached without disturbing or stepping upon the bags. Mr. Maddock, and each of his deputies, as well as Mr. Ellidge and his deputies, testified most positively that they did not remove or in any way whatever disturb the bags, and yet the undisputed proof is that before they were taken from the vault they were so thrown upon the floor in front of the door as to make it impossible to enter the vault and reach the iron case without walking upon them. It is also established by the evidence, without conflict, that the seals on many of the bags were broken when brought into court, and that the packages of ballots could be taken from some of them without in any way interfering with the seals or fastenings remaining upon them. It is true, these seals might have been so broken by persons stepping upon them; but to so account for their condition would be to admit that they were not safely and properly kept, within the meaning of the statute. The object of the statute is not merely to prevent persons from willfully interfering with the returns, but to protect them against casual or negligent interference, so as to preserve their integrity as returns.

Upon the returns all the democratic candidates for county offices, except superintendent of schools, were declared elected by majorities from 68 to 214. The re-count showed, as stated above, that appellant was elected over appellee by 16 votes, the democratic candidate for clerk by but one vote and the republican candidate for sheriff by 17, thus showing a change of 84 votes as to county judge, 127 as to clerk and 94 as to sheriff. The re-count showed changes as to other candidates voted for, but

they were slight as compared with the three above men-
tioned.   There were twenty-one voting precincts in the
county, and the changes were found principally in ten
them.   In many of these precincts, if not all of them,
the changes are so great as to leave little ground for the
belief that they could have been the result of honest mis-
take on the part of the judges and clerks of the election.
In other words, the irresistible conclusion must be, that
if those officers made false returns to the extent indicated
by the re-count, they did so knowingly and fraudulently.
Not only is there an absence of all proof of such miscon-
duct, but each of them, from all precincts of the county,
of both political parties, as well as representatives of
the respective parties who were present at the counting
of the ballots for the purpose of seeing that they were
fairly and honestly canvassed, testified most positively
that the votes were carefully and correctly counted and
that there was no mistake in the returns.   Neither can
it be denied that the evidence of at least some of these
witnesses (without distinction as to party affiliation)
strongly tends to prove that a part of the ballots as they
appeared on the re-count had been changed after the re-
turns were made.   The theory of appellee is, that changes
affecting these parties were made by placing a cross op-
posite the name of appellant on certain straight demo-
cratic ballots which had been voted by a cross in the
circle at the head of the ticket.   It is said this could
have been done without unfolding the ballots or taking
them from the wire, by lifting the corners of the ballots
and marking in the square of the republican ticket, the
latter being printed near the margin on the left side of
the paper.   It cannot be denied that there is plausibility
in this theory; but it is not necessary in this case for us
to determine even that ballots were actually changed,
much less to attempt to ascertain how changes were or
might have been made.   Manifestly, if the ballots were
so carelessly kept, after being returned, as to destroy

their efficacy as proof over the returns, then the returns must prevail, whether the ballots were in fact changed or not, unless the other evidence in the case in some way tends to discredit those returns.

The learned counsel for appellant seem to rest their whole case upon the theory that the evidence as to the place and manner in which the ballots were preserved by the county clerks conclusively proves that they were safely kept, within the requirement of the statute, and therefore they overcame all other evidence in the case. It must be kept in mind that the statute does not prescribe where or the manner in which the officer shall keep the returns, but only that he "shall carefully preserve" them. It is difficult, if not impossible, to conceive of a case in which the evidence would conclusively prove that they had been kept absolutely secure from being interfered with, either by or with the consent of the custodian or others; hence, as already indicated, the question in every case has been,—and unless the statute is changed must hereafter be,—when it is sought to overcome the returns by re-counting the ballots, have such ballots been so securely and carefully preserved as to assure the court that they have not been exposed to change.

It cannot be too often or too strongly urged upon public officers having the custody of election ballots, that they must exercise the highest degree of care and diligence in guarding them against unlawful interference. While the right to have the ballots so kept, and re-counted upon a contest, is a most important right, frequently guarding a candidate against willful or negligent false returns, yet it can readily be seen that to allow a re-canvass of the votes cast at an election to destroy the effect of the returns by the judges and clerks, when regularly made and without proof of omission of duty, negligence, fraud or other misconduct on their part, in the absence of the most clear and convincing proof that they have been so kept as to preclude all idea of their having

been changed, would be most unjust, not only to those officers, but to candidates shown to have been elected by their returns. We think the evidence in this record, when fully considered, falls far short of showing that the ballots in question were so kept and preserved, and that the court below committed no error in so deciding. Its judgment will accordingly be affirmed.

*Judgment affirmed.*