## JOHN R. BONNEY

. *v.*

## SOL T. FINCH.

*Opinion filed June 17, 1899.*

| | |
|---|---|
| 180 | 133 |
| 184 | 554 |
| 180 | 133 |
| 186 | ²36 |
| 180 | 133 |
| e189 | ¹ 38 |
| 180 | 133 |
| .192 | ² 60 |

1. ELECTIONS—*result not disturbed on re-count if ballots have not been properly preserved.* The result of a canvass made by judges of election in accordance with the law will not be disturbed on re-count, where the ballots have not been properly preserved and guarded from interference.

2. SAME—*when ballots are not properly preserved by county clerk.* Ballots returned to the county clerk in canvas bags, which were tied and sealed but left by him for some ten days in the back room of his office, partly on the floor and partly on boxes near two outside windows, through which they might have been reached by parties outside, and to which room the public had access, are not so preserved as to be the best evidence of the result of the election, although the bags were afterwards placed in a cupboard, the door of which was not locked, at which time the seals appeared unbroken.

APPEAL from the Circuit Court of Clay county; the Hon. TRUMAN E. AMES, Judge, presiding.

R. S. C. REAUGH, H. W. SHRINER, E. S. BOYLES, and B. D. MONROE, for appellant.

HOFF & HOFF, ROSE & DILLMAN, and SOL T. FINCH, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The parties to this litigation were rival candidates for the office of county judge of Clay county at the November election, 1898, the appellant being the republican candidate and the appellee that of the democratic party. One R. P. Anderson was also a candidate. The returns were regularly canvassed and appellant declared duly elected by a majority of one, he having received 1983 votes. Appellee received 1982 and Anderson 70. After appellant had been commissioned and entered upon the

duties of his office appellee began this proceeding to contest his election.

The grounds of contest alleged in the petition are, that the judges of certain voting precincts made mistakes or errors against the petitioner in receiving and rejecting ballots and in making additions, with the general averment that such mistakes and errors were committed in all the precincts of the county. Appellant, by his answer, denied each of these allegations. Upon the hearing in the circuit court, on January 30, 1899, the ballots cast at said election were re-counted. They, together with the tally-sheets, poll-books and other papers pertaining to the election, were at that time in the custody of I. N. Holiday by consent of the parties, pending a contest between John A. Bateman and Wesley E. Jackson for the office of county clerk, voted for at the same election. Holiday, as such custodian, was ordered to produce the ballots in court, and by consent of the parties four tellers were appointed to re-count them, which being done, the result was found to be that the petitioner had received 1993 votes, the defendant but 1977 and Anderson 70. It was accordingly decreed that the petitioner, Finch, was duly elected to said office, and from that decree this appeal is prosecuted.

The question for decision on this record is, whether, under the facts and circumstances shown by the record, the ballots shall be permitted to impeach and overturn the return as shown by the return of the canvassing board. That is the only issue presented by the pleadings. The general rule is, that upon an election contest the ballots are the best evidence of the number of votes and for whom cast, and will overcome the official count and return. It has been held that before the ballots can be admitted in evidence in such a case and re-counted it must be shown that they have been safely kept by the proper custodian. Under our present statute they are competent without such affirmative proof, not as the best

evidence, but for what they are worth. (*Catron* v. *Craw*, 164 Ill. 20.) The competency of the ballots in this case cannot, however, be questioned, the certificate of evidence showing that they were admitted and counted by agreement of counsel for the parties. It is not denied that the ballots, as they appeared at the time of the re-count, showed the result as found by the tellers, therefore, if they are to be considered as the best evidence of the result of the election and to overcome the return of the canvassing board, the result reached by the chancellor was unquestionably correct, and our first inquiry must be whether the ballots were entitled to that degree of probative force, or whether, under all the circumstances, they were insufficient to disprove the return made by the canvassers.

Counsel for appellee insist that it was agreed by counsel that the ballots brought into court and afterwards re-counted were the same identical ballots cast at the election, and there is a recital in the decree to that effect. The certificate of evidence, however, shows that the agreement was by no means that broad, it being stated expressly: "The contestee, Bonney, does not admit, however, that said ballots are the identical and original ballots voted at the several election precincts of Clay county, Illinois, at the November election, 1898, or that they have been properly preserved as required by law, and expressly reserves the right to deny that said ballots are such identical and original ballots and that they have been kept as required by law."

The first ground upon which the credibility of these ballots is questioned is, that they were not safely kept as required by the statute. There is no claim that they were not so kept by the judges of the election and promptly returned to the county clerk. Under the statute it was made his duty to *safely keep* them for six months. The statute does not specify the manner or place in which the ballots shall be kept, so that whenever the question

arises it must be determined upon all the facts and circumstances of the case. The evidence shows that the ballots were returned to him in canvas bags, tied and sealed, and these bags were placed,, or, as some of the witnesses say, thrown, in the back room of the county clerk's office, partly on the floor and partly on boxes, near two outside windows. This back room was used by the county clerk as a part of his office, for keeping records, files, etc., and was also occupied by the county judge, who at this time was the only deputy of the county clerk. There was a door opening from the room into the hallway of the court house, and also one opening into the front room of the clerk's office. There was a third door, but this was closed by a file case having been built against it. All parties agree that the canvas bags containing the ballots remained on the floor and boxes about a week or ten days, when some complaint was made by candidates on the democratic ticket to W. R. Whitman, chairman of the democratic central committee, as to the manner in which they were being kept, and he requested to speak to the county clerk about the matter. He thereupon called at the office, and finding the clerk himself absent, talked with Judge Hagle, who was then acting as deputy county clerk, occupying the back room mentioned, and had the keys to the same. Judge Hagle, as he testified, was a life-long republican. He and Whitman had some conversation about the opportunity the clerk had for keeping the ballots as they were kept, and their safety, and finally concluded to put the bags in a cupboard in that room, which they did. Hagle says, speaking of the conversation with Whitman: "We talked the matter over, and I said it would be better to put them in a safer place, away from there. We put them where nobody would see them." Whitman says, that after placing them in the cupboard they attempted to close the door and found it would not stay shut, and that Hagle remarked, "They are no more secure now than they were before." The evidence of

Hagle is to the effect that the door leading into the hall, and the outside windows to the room, were kept locked at night, though he does not state so positively, saying that it was the intention to keep them locked; and his testimony shows that the public was admitted to that back room through the door opening from the front office, without restraint. The testimony of Whitman and other witnesses tends to show that the ballots were so exposed to the public, by reason of the insecurity of the doors and windows, as to be unsafely kept. He says that when he called on Judge Hagle about the matter Hagle told him that "the key was lost to the door," and said "people had access to that room and were constantly going in and out there. The ballots were lying on the floor and on dry-goods boxes, and scattered around a radius of perhaps six feet, and mixed up with other papers and in and under the south window, so that a man could have gone on the outside, climbed up in the window, and, lying on his stomach, could have reached the packages containing some of the ballots without getting into the room."

We think the testimony shows that the ballots were so insecurely kept as to practically destroy the evidence of the ballots, and to call for the enforcement of the well established rule that the return of the canvassing board must prevail over the re-count of ballots insecurely kept.

We said in the recent case of *Eggers* v. *Fox*, 177 Ill. 185, speaking of the duty of the judges of elections to keep the ballots, where it appeared that the town clerk of a voting precinct locked the hall door where the voting had taken place and kept the key until the second day after the election, when the judges and clerks went to the town hall, took the ballots from the ballot-box, sealed them up and delivered them to the town clerk, a justice of the peace and a police magistrate, each having a key to the town hall (p. 193): "It thus appears that the ballots were left in the town hall where they might be reached and tampered with by a person who might feel

disposed to do so. If, after the polls are closed, the votes counted and the result declared, the judges of election for any cause are unable to deliver the ballots and poll-books to the proper custodian, it is their duty to keep such ballots and poll-books in their possession, so that no one can have access to them, until such time as they can be delivered over to the proper custodian, otherwise the ballots will lose their value as evidence when relied upon to impeach or discredit the result as shown by the poll-books. (*Kingery* v. *Berry*, 94 Ill. 515.) There is no evidence here, it is true, that the ballots were meddled with by unauthorized parties, but they were left in the town hall from Tuesday night until Thursday, in an exposed condition, where they might have been reached and tampered with. Under such circumstances we are of opinion that before the ballots could be used to impeach the returns as shown by the poll-books, it devolved upon the appellant to prove that the ballots were not changed or tampered with before they were delivered to the custodian on the second day after the election."

In *Beall* v. *Albert*, 159 Ill. 127, we said (p. 132): "The rule is, that in a contested election proceeding the ballots are better evidence of the number of votes received by the respective candidates than the count made by the judges of election, where such ballots have been preserved according to law, and have not been so exposed to the reach of unauthorized persons as to afford a reasonable probability of their having been changed or tampered with,"—citing authorities; and it was held in that case, that because of the insecure manner in which the ballots had been kept they were insufficient to overcome the return of the canvassing board. And we there further said (p. 135): "While the count of the judges of the election was not as carefully made as it should have been, we are satisfied that it is far safer evidence upon which to rely to ascertain the result of this election than the ballots are when all of the evidence is considered.

Under the present Ballot law, as the ballots are no longer numbered and the voter cannot be called to show that his ballot has been falsified, and as the ballot itself may be changed more easily than formerly and with less danger of detection, a greater degree of care should be used in the preservation of the ballots, and corresponding caution used in admitting them in evidence to change the result as announced by the judges and declared by the canvassing board." In *Murphy* v. *Battle*, 155 Ill. 182, we also held that the result of a canvass made by the judges of election in accordance with law will not be disturbed on a re-count, where the ballots have not been preserved and guarded from interference in the manner prescribed by law.

In this record no evidence whatever is found tending to show that the judges of the election in the several precincts of the county did not carefully and correctly canvass the votes and truly return the result in the tally-sheets made by them, except in so far as it is now claimed that a re-count of the ballots shows mistakes or errors on their part. Nor is it claimed that the canvassing board of the county fraudulently, negligently or inaccurately canvassed the vote and declared the result as shown by the tally-sheets from the several precincts returned to the county clerk. It is insisted on behalf of the appellant that the evidence shows that a number of ballots from the precinct of Oskaloosa had been changed, the contention being, as we understand, that the proof shows that they were changed after they were delivered to the county clerk. We do not regard the evidence as sufficiently establishing that fact, though there is perhaps enough upon which to base such an inference. There is, however, clear and satisfactory proof that the tally-sheet returned from that precinct to the county clerk was changed after it came into his hands. It appears to have been changed as to the vote between Bateman and Jackson, the proof consisting of evidence to the effect

that the three tally-sheets required by law to be made,— one for the town clerk, one for the county clerk and one for the Secretary of State,—were originally made the same, whereas upon the canvass of the votes it appeared that the one returned to the county clerk did not correspond with the other two, the former showing that Bateman had received 50 votes, Jackson 190 and Long 2, while the latter showed Bateman to have received 62, Jackson 178 and Long 2. There is also evidence tending to show that the tallies opposite the names of Bateman and Jackson and Finch and Bonney were made with an ordinary lead pencil, whereas they had originally been made with an indelible pencil. These changes upon the tally-sheet it is not claimed had any effect upon the result of the re-canvass of the ballots, and the only purpose of the evidence was to show that some one had the disposition and the opportunity to interfere with the returns of that election, and actually did so. The petitioner offered no evidence whatever to show that the ballots had not been changed. The election was an exceedingly close one. It was in all probability known from the first canvass of the vote that a contest would follow, and we cannot escape the conclusion, when all the evidence is considered, that the county clerk was grossly, if not willfully, negligent in the preservation of the ballot bags, tally-sheets, etc., placed in his hands.

It is insisted, with considerable support in the testimony, that when Judge Hagle and Whitman placed the ballots in the cupboard, as well as when they were packed to be sent to the county court in the Bateman-Jackson contest, the canvas bags showed that they had not been interfered with,—that is, that they were tied and sealed in the same manner as when they came into the office. We cannot attach much importance to this testimony, in view of the fact that there is nothing to show that they were so tied and sealed that a person of ordinary skill could not have broken the seal and untied them, and af-

terwards re-tied and sealed them in the same manner. In other words, there is nothing here to show (nor does the statute require) that any impression should be made upon the seal, or that they should be tied in such a peculiar manner as to enable one to detect the breaking of the seal or unfastening of the knot. It is also to be remarked that the persons who tied and sealed the bags did not testify that they had not been interfered with, and all that was proven in that regard was by witnesses who had not observed the manner in which they had been secured in the first place, but who simply said that they did not seem to have been disturbed or that they seemed to be intact. It seems too clear for argument that if a person or persons had the motive and were willing to violate the sanctity of the ballot-box by changing ballots after they were returned to the county clerk, they could, under the circumstances here shown, have gained possession of the ballots, (as they did the tally-sheets,) had ample time to change them, re-place them in the bags and so re-tie and seal them that no one could detect the fraud. It is for that very reason that the law will not permit a re-count of the ballots to overcome and destroy the return made by the canvassing board; and, as shown by the authorities cited, it is not a question as to whether actual changes or interference in any way with the ballots has been proved, but whether the opportunity to do so has been afforded. In a case of this character the public interest is so far involved that rules must be adhered to and enforced which will tend to secure the rights of parties in the future, and to hold in this case that the ballots were safely kept, within the meaning of the statute, would certainly be to encourage carelessness and indifference in their preservation, and to greatly imperil the rights of candidates as well as to disfranchise the voters at every election.

Our conclusion is, that the return of the canvassing board declaring the election of appellant should have

been sustained, and that the court erred in its ruling to the contrary. The decree of the circuit court will be reversed and the cause will be remanded, with directions to dismiss the appellee's petition.

*Reversed and remanded.*