(Nos. 19155, 19156, 19157.—)
FREDERICK J. MacGUIDWIN, Appellant, *vs.* THE SOUTH
PARK COMMISSIONERS *et al.* Appellees.

*Opinion filed December 20, 1928.*

McKinney, Lynde & Grear, (Hayes McKinney, and Joseph M. Larimer, of counsel,) for appellant.

Kirkland, Fleming, Green & Martin, and Elmer J. Schnackenberg, (Joseph B. Fleming, William Wilson, William H. Symmes, and Joseph H. Pleck, of counsel,) for appellees.

Mr. Justice Duncan delivered the opinion of the court:

On July 7, 1928, appellant, Frederick J. MacGuidwin, and nine other petitioners, brought three separate suits and filed therein three separate petitions in the circuit court of Cook county to contest an election held on June 4, 1928, in the district referred to in this record as the South Park district in the city of Chicago, for the purpose of voting for and against three propositions to issue bonds for public improvements. The propositions submitted to the voters in the South Park district at the election were three, to-wit: (a) To issue bonds of the South Park Commissioners in the amount of $3,000,000 for completion of a stadium on

the lake front, in the city of Chicago; (*b*) to issue bonds of said commissioners in the amount of $5,000,000 for general park purposes; and (*c*) to issue their bonds in the amount of $7,500,000 for improvement of the lake front, in the city of Chicago. Appellee the South Park Commissioners appeared in all three of the cases, and on July 26, 1928, filed a motion in each of the cases to dismiss the petition therein because of its insufficiency to give the court jurisdiction. The motions to dismiss were all based on the claim that the petitions were insufficient to give the court jurisdiction of the subject matter of the suits or of said appellee for reasons set out in fourteen separate and numbered paragraphs, which are substantially as follows: (1) There is no allegation of petitioners, except on information and belief, that they are, or any one of them is, an elector of the South Park district; (2) the petitions do not show when the result of the election was determined or that the result of the election has been determined as required by law; (3) the petitions are not, in fact, signed and verified by five or more electors of the South Park district who knew the contents thereof before signing; (4) there are no allegations of fact showing the propositions did not receive a majority of the votes cast at the election; (5) there are no proper allegations that a re-count of the votes cast would or might change the result of the election on any of the propositions; (6) there is no allegation of fact sufficient to sustain or support an order directing a re-count of the ballots cast at the election; (7) the averments of paragraphs 11 to 29, inclusive, of the petitions are insufficient to raise any presumption against the accuracy of the returns in the specific 413 precincts mentioned therein or in the remaining 645 precincts, are insufficient to overcome the presumption that the judges and clerks of election performed their duty, and insufficient to support the conclusion that the returns show on their face such inaccuracy as to warrant a re-count; (8) it does not appear from para-

graphs 11 to 29, inclusive, that there was an overcast of votes in certain precincts as alleged, because it is not alleged that the numbers given as the total vote in those precincts are correct, and it is not alleged that the overcast votes were cast, counted or returned in favor of the propositions; (9) paragraphs 31 to 52, inclusive, of the petitions, alleging certain irregularities in 21 precincts, are insufficient to support the general charge of irregularities in the 1037 precincts of the South Park district concerning which no specific facts are averred; (10) it is not averred how or in what manner the alleged fraudulent votes in the 21 precincts were counted or returned, or that if all the alleged fraudulent votes in said 21 precincts should be thrown out or disregarded on a re-count the result of the election would be changed as to any of the propositions; (11) from all the allegations of paragraphs 31 to 52, inclusive, it appears that a re-count of the ballots would be of no avail because the irregularities complained of appear *dehors* the ballots; (12) it is alleged in paragraphs 31 to 52, inclusive, of the petitions that certain voters were not residents at the addresses or places of residence at which the returns showed them to reside, but it is not alleged that said voters were not electors of the respective precincts in which they voted, on the day of the election; (13) it is alleged in paragraphs 31 to 52, inclusive, that the returns showed certain voters purported to vote from addresses or places which did not exist, but not that said voters were not electors of said respective precincts on the date of the election; (14) there is a non-joinder of indispensable parties defendant, to-wit, the board of election commissioners of the city of Chicago and Robert M. Sweitzer, county clerk of Cook county. On August 3, 1928, on leave of the court five of the petitioners filed amendments to all of the original petitions. The amendments filed were amendments to the allegations of paragraphs 6, 58, 60 and 61 and the prayer of the petitions, and by way of supplementing and amending said four para-

graphs of the petitions two new paragraphs were added to the petitions and numbered 62 and 63. The amendments were all for the purpose of having the definite allegations made that the returns of precinct election officials were can-vassed and the results proclaimed by "the board of election commissioners, the county judge of Cook county, Illinois, and the city attorney of Chicago, Cook county, Illinois, act-ing as the general canvassing board for such city," in lieu of the allegations in the original petitions that the returns of the precinct election officials "were canvassed and the result proclaimed by the board of election commissioners," only. All of the petitions as amended were signed and sworn to by five of the original ten petitioners, all of whom had signed and sworn to the original petitions. The origi-nal motion to dismiss the original petitions was allowed to stand as a motion to dismiss all of the amended petitions, which was sustained by the court, and an order was then entered in all of the cases dismissing all of the amended petitions. Frederick MacGuidwin, one of the five petition-ers verifying the three amended petitions, has perfected an appeal to this court in all of the cases.

The allegations in the original petitions and in the peti-tions as amended are the same in every particular, except the words therein employed to name and describe the par-ticular propositions contested. The abstracts and briefs and arguments filed in this court are also identical, with the same exceptions above mentioned with reference to the peti-tions. The three suits in this court are prosecuted by the same appellant against the same appellees but bear different docket numbers. The only question presented in this court is as to the sufficiency of the amended petitions to give the court jurisdiction of the subject matter therein and to order a re-count of the ballots in all of the cases. A decision in any one of the three cases by this court must necessarily be a controlling decision in the other two cases, as the same questions are presented and argued in all of them. The

causes were therefore consolidated in this court for consideration and determination and they will all be disposed of by this decision as if one and the same case.

All of the amended petitions contain sixty-three numbered paragraphs, exclusive of the prayers for relief and for process. All of the allegations in the sixty-three paragraphs, except the two numbered 62 and 63, which were added to the original petition, are immediately preceded by these words: "Now come the petitioners whose names are herein below set out and respectfully represent unto the court that they are informed and believe and upon such information and belief state that." Many of the paragraphs and the allegations therein stated are not sufficient pleadings, when considered alone, to give the court jurisdiction to order a re-count of the ballots in any precinct or of the entire ballots cast in the South Park district at the election and do not allege any matters or facts necessary to be stated in the petitions for such contests. Such paragraphs as we deem proper to be considered in our consideration of the sufficiency of the petitions, omitting the above quoted words at the beginning of such paragraphs, contain substantially the following allegations:

1. Each of the ten petitioners is a resident and was on June 4, 1928, a duly qualified registered voter and elector of the South Park district within the city of Chicago, Cook county, Illinois. (The name, place of residence, ward number and precinct number of each of the petitioners is here stated.)

2. The South Park Commissioners is a municipal quasi corporation organized by special act of the legislature of Illinois in force February 24, 1869, as amended, with authority to acquire, improve and manage parks, park systems and the like, and to levy taxes therefor within the South Park district, but subject to the limitation and restrictions of law as to the approval by popular vote of bonds proposed to be issued.

3. The South Park district consists of the major portion of wards 1 to 19, inclusive, in the city of Chicago, and embraces 1054 voting precincts and parts of four other voting precincts.

4. At an election held on Monday, June 4, 1928, in Cook county, for the election of judges of the superior court, and in the city of Chicago for the election of a judge of the municipal court, three propositions were submitted to the voters of the South Park district, as follows: (a) To issue bonds of the South Park Commissioners in the amount of $3,000,000 for the purpose of completing a stadium on the lake front of Chicago, etc.; (b) to issue bonds of the South Park Commissioners in the amount of $5,000,000 for acquiring, improving and completing parks within its territory, etc.; (c) to issue bonds of the South Park Commissioners in the amount of $7,500,000 for the purpose of constructing a park, boulevard, driveway or parkway along the lake front of the city of Chicago, etc. These three propositions are identified in the petitions as propositions "A," "B" and "C," respectively.

5. At the same election there were submitted five other propositions, two for all the voters of Cook county and three for all the voters of the city of Chicago. The two county propositions were on a separate ballot and related (1) to the levy of a tax for a soldiers' and sailors' burial fund; (2) to an additional tax for such fund. The three city propositions were, (1) whether legislation by the State of Illinois or the city of Chicago pertaining to local transportation or subways should be, before becoming effective, submitted to a referendum of the voters; (2) whether the city council of the city of Chicago should refuse to pass ordinances permitting the use of the traction fund to build loop subways; and (3) whether the city of Chicago should proceed, without delay, to provide transportation where present facilities are inadequate, by the use of buses, pay-

ing the expense out of the traction fund. These three city propositions were submitted on a separate ballot.

6. A total number of 102,918 ballots were cast within the South Park district at the election of June 4, 1928. The results of the returns of said election as to said propositions "A," "B" and "C" were duly proclaimed on, to-wit, June 8, 1928, by the board of election commissioners, the county judge of Cook county, Illinois, and the city attorney of Chicago, Cook county, Illinois, acting as the general canvassing board for such city, for the purpose of canvassing the returns of the precinct election officials, and the said returns as so proclaimed were as follows: Proposition "A," votes in favor thereof, 47,843, votes against said proposition, 36,187, majority for said proposition, 11,656 votes. Proposition "B," votes in favor thereof, 44,413, votes against said proposition, 37,345, majority for said proposition, 7068 votes. Proposition "C," votes in favor thereof, 45,845, votes against said proposition, 35,739, majority for said proposition, 10,106.

7. The poll-books, tally-sheets and returns made and returned by the judges and clerks of election as to the votes on these propositions were incorrect, erroneous and fraudulent. A majority of the electors voting at the election upon each of the propositions did not vote in favor thereof, and each of the propositions was defeated by the true and actual vote of the electors voting at the election. The judges and clerks of the election who were the precinct election officials in the South Park district did not, in fact, canvass, count and tally, according to law, the ballots upon the three propositions, but, on the contrary, estimated the votes on those propositions and failed to perform the duties required of them by law, and carelessly and fraudulently counted the ballots on the three propositions and failed to make true returns thereon. So as a result thereof they made returns showing that many votes, to-wit, at least 12,000 in number, appeared to have been cast in favor of each of the three

propositions which were not, in fact, cast in favor thereof, and failed to show that many votes, to-wit, at least 5000 in number which were cast against each of the three propositions were so cast against them, so that as a result of such estimating and failure actually to count the ballots, and as a result of the careless and fraudulent count, the returns failed to show the true result of the election held June 4, 1928, upon each of the three propositions, and thereby made the net results of the election as to each of the propositions at least 17,000 votes more in favor thereof than the votes actually justified.

8. The returns made for the election of June 4 upon the three propositions "A," "B" and "C" by the election officials of the 1058 precincts within the South Park district were erroneous and inaccurate to such an extent that the returns did not truly represent the actual vote cast at the election on each of the three propositions aforesaid, and that the percentage of error was not less than twenty per cent. The percentage of error operated to increase the number of votes shown by the returns in favor of each of the three propositions and to decrease the number of votes shown by the returns of votes against each of the three propositions, so that the result of such errors and inaccuracies amounts to a change by way of a net reduction of not less than 17,000 votes upon each proposition,—that is to say, as to each of the three propositions the net vote favorable thereto was at least 17,000 votes less than the net vote shown by the returns as favorable thereto, and each of said propositions was defeated by a substantial majority against it.

9. No contest was made as to the three propositions "A," "B" and "C" at the election of June 4—that is, no workers opposing those propositions appeared in various precincts attempting to procure voters to vote against them. The precinct captains and other workers, representing both the democratic and republican party organizations in the precincts in the South Park district, were directed and in-

structed by the leaders of those party organizations to work for and favor an affirmative vote on the three propositions. Meetings of such precinct captains and workers of both parties were held for the purpose of requesting and directing them to exert their influence and efforts toward procuring a large affirmative vote as to each of the three propositions, and as a result thereof many votes were canvassed, counted, tallied and returned in favor of each of the three propositions which were not actually cast in favor thereof, and many votes which were cast against each of said three propositions were not canvassed, counted, tallied and returned against the three propositions.

59. By reason of various errors and irregularities propositions "A," "B" and "C" were, and each of them was, credited with 12,000 more "yes" votes than were actually received, and each of them was credited with 5000 less "no" votes than each of them actually received; that the propositions were, and each of them was, defeated by the true and correct votes of the voters of the South Park district.

60. The said canvass and proclamation by said canvassing board for such city of Chicago and its announcement of the result of the canvass of the votes upon said propositions "A," "B" and "C," and each of them, are erroneous and are not based upon any inspection of the ballots cast at said election, and were made without any opportunity for said canvassing board for such city of Chicago to investigate properly the various errors, mistakes and omissions and frauds made in the count of said ballots as made by the judges and clerks of said election in said South Park district; that, on the contrary, the said proclamation was based on mistakes, omissions and fraud in the count of said ballots and upon false and erroneous returns of said judges and clerks of election in said South Park district upon each of said three propositions; that said canvassing board for such city of Chicago did not correct, alter or in any manner eliminate the substantial and apparent errors in the

count of the ballots made by the judges and clerks of said election in the returns made by them, and that said errors, mistakes and frauds remained as such errors, mistakes and frauds and became the cause which determined the result of said canvass by said canvassing board for such city of Chicago and the said declaration of the said proclamation of the result of said election by said canvassing board for such city of Chicago.

61. A re-count of the ballots cast in said election will show a difference in the result from the results of the canvass made by said canvassing board for such city of Chicago; that when the total votes cast for and against said propositions "A," "B" and "C," and each of them, shall have been correctly counted and returned, such re-count will show that said propositions "A," "B" and "C" were, and each of them was, defeated by the voters of the South Park district.

The two added paragraphs, Nos. 62 and 63, were framed as independent paragraphs, and the quoted words that precede all the other paragraphs are no part of said two paragraphs and in no way modify the same. Said two paragraphs are in the following words and figures:

62. Each of the petitioners signing this amendment states of his own knowledge as to himself that he is, and on June 4, 1928, was, a duly qualified and registered voter and elector of the South Park district within the city of Chicago, county of Cook and State of Illinois, residing at the place set out in paragraph 1 of the original petition filed herein as his residence.

63. The petitioners, and each of them, of his own knowledge states that on June 4, 1928, an election was held in said South Park district at which there were submitted to the electors of said South Park district the three propositions or questions set out in paragraph 4 of the original petition filed herein as propositions "A," "B" and "C;" that the results of said election as to said propositions "A," "B" and "C" were duly proclaimed, determined and de-

clared on June 8, 1928, by the board of election commissioners, the county judge of Cook county, Illinois, and the city attorney of Chicago, Cook county, Illinois, acting as canvassing board for such city for the purpose of canvassing the returns of the precinct election officials, and that the said results as so proclaimed, determined and declared were as follows: Proposition "A," votes in favor thereof, 47,843; votes against said proposition, 36,187. Proposition "B," votes in favor thereof, 44,413; votes against said proposition, 37,345. Proposition "C," votes in favor thereof, 45,845; votes against said proposition, 35,739.

The greater part of paragraph 8 of the petitions contains allegations which are in nowise pertinent to the subject of the said petitions and for those reasons are not considered in this case. These allegations are, in substance, that although a large number of propositions, including propositions to issue bonds, have been submitted to the voters of Cook county in recent years there has been no contest or official re-count of the ballots on any of such propositions; that in consequence thereof there has grown up among election officials in said county careless habits in counting the ballots on propositions, and that the returns of election officials on propositions submitted do not show the true vote cast thereon; that it is commonly known and understood among persons familiar with elections in the city of Chicago that the returns made by election officials therein on proposition ballots are inaccurate and not in accordance with the actual vote cast; that following the general election of November 2, 1926, at which six propositions were submitted, a semi-official investigation and re-count of the ballots cast on said six propositions were made in a representative and typical number of precincts; and that such investigation showed that the returns from none of the precincts examined correctly showed the actual vote cast on the six propositions, and that the percentage of variation between the returns and the actual vote cast was from nine

per cent in some precincts to more than one hundred per cent in others.

The allegations of the petitions in paragraphs 10 to 58, inclusive, merely purport to charge many frauds and appearances of frauds by the election officials in conducting the election and in the counting of the ballots. Some of the many of such charges of fraud or appearances of fraud against the election officials are, in substance, the following: They fraudulently permitted voters to vote at the election who were not registered voters and who did not qualify as voters by affidavit or otherwise; permitted many persons to personate registered voters and to vote in their names; permitted many persons to vote in the names of persons who were dead; permitted many persons to vote as residents of places within various precincts who were not, in fact, residents of such places; permitted many persons to vote as residents of places where no residences existed and where such voters did not reside; permitted many ballots to be placed in the ballot-boxes which were not, in fact, marked or voted by qualified voters; permitted more ballots to be cast and counted than the number of qualified voters voting in the election; permitted many persons to vote more than once in the same precinct and more than once in different precincts; permitted unauthorized persons, other than election officials, to handle, canvass, count, tally and return the ballots cast at said election. None of the paragraphs charging such frauds, or all of them taken together, contain sufficient allegations to show that the results of the election would be changed thereby if proof should be admitted of all the facts charged. There is a general lack of allegations in all the paragraphs charging such frauds that such fraudulent votes were cast for the propositions aforesaid. There are other allegations in the petitions that charge uniformity of the vote cast on the three propositions, both for and against them, in a great many precincts, and also charge a near uniformity in several other precincts in

the votes cast for and against such propositions. If such precincts showing such uniformity and near uniformity of the votes cast were entirely omitted in a re-count it clearly appears from all such allegations that the results of the election would not be changed. The frauds are only charged as to about 413 precincts out of the 1058 precincts in the South Park district. It cannot be presumed by this court from the charge of frauds in 413 precincts of the district that such frauds were committed within the remaining precincts of the district. The presumption is that the election officials discharged their duty honestly and according to law in holding the election and in counting the ballots. (*Rexroth* v. *Schein*, 206 Ill. 80; *Clarke* v. *Bettenhausen*, 296 id. 373.) Where the pleader in contests of election cases relies on charges of fraud, specific facts must be charged to show such frauds and the pleader must show definitely in what precincts the frauds charged occurred. None of the paragraphs charging fraud aid or tend in any way to aid or strengthen the charges in the petitions that are above stated. For these and other reasons we have omitted all such paragraphs charging fraud.

As already stated, the real question presented to this court is as to the sufficiency of the amended petitions to give the lower court jurisdiction of the subject matter therein and to order a re-count of the ballots in all of the cases. The motion to dismiss is in the argument of both parties treated as a general demurrer to the petitions. It has been the practice in this State for many years to give such a motion the effect of a demurrer to a bill in chancery for want of equity in the bill. (*Brill* v. *Stiles*, 35 Ill. 305; *Hickey* v. *Stone*, 60 id. 458; *Emerson* v. *Western Union Railroad Co.* 75 id. 176.) The pleader in the motion to dismiss for want of jurisdiction may not only challenge a bill in equity for insufficiency appearing on the face thereof, but may also allege any fact not appearing on the face of the bill as a ground for dismissing such bill, and if such fact constitutes

a sufficient reason for dismissing the bill for want of juris-
diction the pleader may introduce evidence of such fact.
The same practice above set forth as to motions to dismiss
a bill in equity for want of jurisdiction prevails in election
contest cases in this State. *Conway* v. *Sexton,* 243 Ill. 59;
*Clarke* v. *Bettenhausen, supra; Brelsford* v. *Community
High School District,* 328 Ill. 27.

One of the contentions made by appellees in this court is
that the petitions are defective by reason of a non-joinder
of indispensable parties, as is apparent on their face. The
contention on this point is, that since the prayer of the peti-
tions asks that the tabulated statements of the returns made
by the canvassing board be corrected to show the true re- ·
sults of the election, the members of the canvassing board
and the county clerk should be made parties defendant.
Section 117 of the Election act, as hereinafter set forth,
provides that in contests of elections on public questions the
municipal corporations in which such elections were held
shall be made parties defendant and process be served upon
them. The statute makes no other party defendant nec-
essary. The proceeding to contest an election is wholly
statutory. (*Clarke* v. *Bettenhausen, supra.*) Its purpose
is to determine the true vote of the electors and not to
amend the canvass of the returns. (*County of Lawrence*
v. *Schmaulhausen,* 123 Ill. 321.) The members of the can-
vassing board and the county clerk of Cook county are not
only not indispensable parties defendant to the petition in
such case but are not even proper parties defendant. The
canvassing board has discharged completely its duty, and it
is not the province of the court in an election contest case
to correct or change its return. It is simply the province
of the court to determine what was the true result of the
election.

It is further contended by appellees that the amended
petitions were fatally defective because they do not show
that the election was determined by entering of record in

the county court the result of such election, as distinguished from acts done by the canvassing board. It is therefore contended that the petitions do not show that they were filed within thirty days of the determination of the election, and that such election was not determined until the county judge entered of record the results of the election, etc.

Section 117 of the Election act, under which the petitions in this case were filed, reads, in part, as follows: "In the case * * * of all public measures or subjects submitted * * * to the voters of * * * any city * * * or any other municipal corporation * * * any five electors of the * * * municipal corporation * * * may contest the results of any such election by filing a written statement in the circuit or superior court within thirty days after the result of the election shall have been determined, in like form as in other cases of contested elections in the circuit court."

Sections 1, 2 and 7 of article 5 of "An act regulating the holding of elections and declaring the result thereof in cities, villages and incorporated towns of this State," approved June 19, 1885, as amended, which has been adopted by the city of Chicago, read, in part, as follows:

"Sec. 1. Within seven days after the close of such election, the county judge, with the assistance of the city attorney and the board of election commissioners, who are hereby declared a canvassing board for such city, shall open all returns * * * and shall make abstracts or statements of the votes in the following manner as the case may require, viz.: * * * all votes for any proposition, which may be submitted to a vote of the people, on one sheet, and all votes against any proposition, submitted to a vote of the people, on another sheet.

"Sec. 2. It shall be the duty of such board of canvassers to canvass, and add up and declare the result of every election hereafter held within the boundaries of such city, village or incorporated town, and the county court shall there-

upon enter of record such abstract and result, and a certified copy of such record shall thereupon be filed with the county clerk of said county. * * * And such abstracts or results so entered and declared by such county court, and a certified copy thereof, shall be treated everywhere within the State, and by all public officers, with the same binding force and effect as the abstract of votes now authorized by the general law of the State.

"Sec. 7. The county judge shall be the presiding officer of such canvassing board, and a majority of such canvassing board shall have the right to declare the result, and the result, when so declared, the said county judge shall cause to be entered of record in his court as aforesaid, which shall be conclusive as to the votes cast at such election in all the precincts of such city."

Section 117 of the Election act clearly provides that petitions or statements for contest of elections shall be filed within thirty days after the result of the election shall have been determined. Section 1 of article 5 aforesaid, regulating the holding of elections and declaring the result thereof in cities, etc., makes it clear that it is the duty of the board of election commissioners to open all election returns and make abstracts or statements of the votes, and on one sheet to enter and record all votes for any proposition and on another sheet all votes against any proposition. In section 2 of said article it is made the duty of such board to add up and declare the result of such an election. The election is determined by the board of canvassers, and paragraph 63 of the petition as above quoted specifically charges that the results of the election as to the propositions aforesaid were duly proclaimed, determined and declared on June 8, 1928, by the board of election commissioners, and thereafter sets out the votes of the election as so proclaimed, determined and declared. It is very apparent, therefore, that this second contention of appellees cannot be sustained, as the petitions for contest were filed on July 7, 1928. The county

judge enters of record the results of the election as determined by the canvassing board of which he is a member, but such entry is no part of the determination by the canvassing board. The case cited by appellees, *Cipowski* v. *City of Calumet City*, 322 Ill. 575, is not authority for such contention. The contention made in this case was not even made or suggested in the *Cipowski case.*

It is further contended by appellees that the petitions as above set forth are insufficient to warrant a re-count of the ballots cast at the election. The argument is that paragraphs 7, 8, 9, 59, 60 and 61 allege mere conclusions of the pleader and are too indefinite and general to sustain the prayer of the petitions. It is also argued that it is not the right of the petitioner to have a re-count of the ballots cast in the entire district, containing 1058 precincts, on the general allegations that the propositions aforesaid received 12,000 less votes than were counted for them and returned by the judges and clerks of election, and that the votes against such propositions were 5000 more than were so counted and returned against the propositions. The reason assigned for such argument is that an examination and re-count of the entire vote of the district must necessarily be at great cost to the people of the district. We hold that the allegations of the petitions as above set forth, and particularly the allegations in paragraph 7, state, as against a general demurrer, a good and sufficient point of contest to warrant such re-count of the ballots. This court in *Clarke* v. *Bettenhausen, supra,* held that a petition to contest an election must set forth the points on which the election is to be contested, must be verified by the proper affidavits, must be filed within the time prescribed by statute, must allege that the petitioners are electors, and must comply with all other statutory provisions necessary to give the court jurisdiction. This court has held that in an election contest where a contestant states by proper allegations generally that he received a certain number of votes cast in

the entire voting municipality or district more than his opponent received who by the election returns was declared to be elected, such contestant has the right to have the entire ballots counted to determine the true result of the election. The same proposition has been declared with reference to an election upon propositions to be determined by the number of legal votes cast for and against the propositions. (*Bonney* v. *Finch,* 180 Ill. 133; *County of Lawrence* v. *Schmaulhausen, supra; Talkington* v. *Turner,* 71 Ill. 234; *Choisser* v. *York,* 211 id. 56; *Schuler* v. *Hogan,* 168 id. 369; *Allerton* v. *Hopkins,* 160 id. 448.) The Supreme Court of Maryland has recognized the same doctrine with reference to an election contest. (*Bragunier* v. *Penn,* 29 Atl. 12; *Leonard* v. *Woolford,* 46 id. 1025.) In the latter case of *Leonard* v. *Woolford* it was said, quoting a decision in another case: "It is obvious that if the court were to require the same precision and certainty in an election petition as in the pleadings between parties to a suit at law, the object of which pleadings is to produce a single issue, the difficulty of stating precisely the manner in which a fraud had been perpetrated or an undue return made would to a great degree nullify the law itself, which designs that such charges should be investigated. The rule must not be held so strict as to afford protection to fraud by which the will of the people is set at naught, nor so loose as to permit the acts of sworn officers, chosen by the people, to be inquired into without an adequate and well-defined cause." The allegations in the petitions in the Maryland cases are much more general and indefinite than are the allegations in the petitions in this case. We suggest, in answer to the argument of appellees that the contest in this case will be conducted at great expense to the people of the South Park district, that much more consideration should be given to the fact that if the propositions in this case were not supported by the majority of the people of the district they would be subjected to many times

greater outlays by having to bear the expense of paying $15,500,000 in bonds, the payment of which they had the legal right to avoid by defeating such propositions at the election aforesaid.

Under the averments in the petitions that are above set out, the only question of the contest would be as to whether or not the propositions were sustained or defeated as shown by the ballots cast at the election. If the petitioners should elect to file amendments to their petitions by alleging specific facts showing that such frauds were committed by the election officials conducting the election, or by others assisting them, by way of changing the ballots in various precincts of the district after they were cast by the voters, and that they were counted as so fraudulently marked and changed, or if other similar frauds were committed in such several precincts to warrant the court in disregarding the ballots found in the returns of such precincts, they should be allowed to file amendments to the petitions of the character aforesaid. This court has held that a contestant, after stating a good point of contest within the time required by the statute, can avail himself of any amendment or pleading that he desires to file, and may file the same even after the thirty days have expired for filing the original petition. *Dale* v. *Irwin,* 78 Ill. 170; *Brents* v. *Smith,* 250 id. 521; *Clarke* v. *Bettenhausen, supra; Hulse* v. *Nash,* 332 Ill. 500.

The judgments of the circuit court in all of these cases are reversed and the causes are remanded, with directions to allow further amendments to the petitions if the petitioners shall be so advised.

*Reversed and remanded, with directions.*